# EXHIBIT B

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

MIN ███████

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATE I MUST PAY.**

| December 28, 2006 | College Point | NY |
|---|---|---|
| (Date) | (City) | (State) |

**18-34 120th Street, College Point, NY  11356**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 395,520.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **EquiFirst Corporation** . I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   6.350 %. The interest rate I will pay may change in accordance with Section 4 of the Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the **1st** day of each month beginning on  **February 1, 2007**

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If on  **January 1, 2037**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**EquiFirst Corporation** , 500 Forest Point Circle , Charlotte, NC 28273
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,273.47 .
This amount may change.   With a final payment due of $ 244,342.98 due on **January 1, 2037.**

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Multistate Adjustable Rate Note-Libor Index
████████ (New York Version)

Loan Number ████████

Page 1 of 4

Initials *HS*

**4. INTEREST RATE AND N      THLY PAYMENT CHANGES**

   **(A) Change Dates**
   The interest rate I will pay may change on **January 1, 2012**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding **3.960** percentage points ( **3.960 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

   **(D) Limits on Interest Rate Changes**
   The interest rate I am required to pay at the first Change Date will not be greater than **9.350%** or less than **6.350 %** . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **12.350%** or less than the initial interest rate provided for in Section 2 of this Note.

   **(E) Effective Date of Change**
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   **(F) Notice of Changes**
   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER RIGHT TO PREPAY**
 I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial payment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

Loan Number ▮▮▮▮        Page 2 of 4                    Initials *H.S*

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit: and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.00 % of my overdue payment of principal and interest. I will pay this late charge but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Loan Number: ███████    Page 3 of 4    Initials _HS_

**11. UNIFORM SECURED N**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**"WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED"**

_____ (Seal)  
Henry Sarmiento                          -Borrower

_____ (Seal)  
                                         -Borrower

_____ (Seal)  
                                         -Borrower

_____ (Seal)  
                                         -Borrower

_____ (Seal)  
                                         -Borrower

_____ (Seal)  
                                         -Borrower

Loan Number ▮▮▮▮                         Page 4 of 4

## ADJUSTABLE INTEREST RATE FLOOR Addendum to Note

This ADJUSTABLE INTEREST RATE FLOOR ADDENDUM is made this **28th** day of **December, 2006**, and amends the Note in the amount of U.S. $ **395,520.00** dated the same date and given by the person(s) who signs below (the "Borrower(s)") to **EquiFirst Corporation** (the "Lender").

In addition to the agreements and provisions made in the Note and the Security Instrument, and not withstanding any provisions to the contrary contained in said Note or the Security Instrument, both the Borrower(s) and the Lender further agree as follows:

### ADJUSTABLE INTEREST RATE FLOOR

THIS LOAN HAS AN INTEREST RATE "FLOOR" WHICH WILL LIMIT THE AMOUNT THE INTEREST RATE CAN DECREASE. REGARDLESS OF ANY CHANGES IN THE INDEX, THE INTEREST RATE DURING THE TERM OF THIS LOAN WILL NEVER BE LESS THAN THE INITIAL INTEREST RATE PROVIDED FOR IN SECTION 2 OF THE NOTE.

Henry Sarmiento

This BALLOON PAYMENT ADDENDUM is made this **28th** day of **December, 2006** and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(s) to **EquiFirst Corporation** (the "Lender") to secure repayment of a Note in the amount of U.S.
**$ 395,520.00.**

In addition to the agreements and provisions made in the Note and the Security Instrument, both the Borrower(s) and the Lender further agree as follows

1) THE TERM OF THE LOAN IS **30** YEARS. AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPLE BALANCE AND ANY ACCRUED INTEREST THEN OWING 30 YEARS FROM THE DATE ON WHICH THE LOAN IS MADE. THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

2) **CALCULATION OF MONTHLY PAYMENT AT CHANGE DATE**
**THE SECOND PARAGRAPH OF SECTION 4(C) OF THE NOTE IS HEREBY AMENDED BY DELETING IT IN ITS ENTIRETY AND REPLACING IT WITH THE FOLLOWING:** "THE NOTE HOLDER WILL THEN DETERMINE THE AMOUNT OF THE MONTHLY PAYMENT THAT WOULD BE SUFFICIENT TO REPAY THE UNPAID PRINCIPAL BALANCE THAT I AM EXPECTED TO OWE AT THE CHANGE DATE IN FULL OVER THE REMAINING AMORTIZATION PERIOD OF MY LOAN AT MY NEW INTEREST RATE IN SUBSTANTIALLY EQUAL PAYMENTS. THE RESULT OF THIS CALCULATION WILL BE THE NEW AMOUNT OF MONTHLY PAYMENT. I UNDERSTAND THAT THE AMORTIZATION PERIOD OF MY LOAN IS 40 YEARS FROM THE DATE MY FIRST PAYMENT IS DUE AND THAT I WILL HAVE A FINAL BALLOON PAYMENT DUE ON THE MATURITY DATE."

3) AT LEAST NINETY (90), BUT NOT MORE THAN ONE HUNDRED TWENTY (120) DAYS PRIOR TO THE MATURITY DATE, THE LENDER MUST SEND THE BORROWER(S) A NOTICE WHICH STATES THE MATURITY DATE AND THE AMOUNT OF THE "BALLOON PAYMENT" WHICH WILL BE DUE ON THE MATURITY DATE (ASSUMING ALL SCHEDULED PAYMENTS DUE BETWEEN THE DATE OF THE NOTICE AND THE MATURITY DATE ARE MADE ON TIME).

_____          _____
**Henry Sarmiento**

_____          _____

_____          _____

# Note Endorsements

Borrower(s): Henry Sarmiento
Property Address: 18-34 120th Street, College Point, NY  11356

Without Recourse, Pay to the Order of:

EquiFirst Corporation

By:_____

Paul Gilroy

Assistant Vice President

Page 1 of 1